**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TAKESHIA LANDRY**, individually and as representative of N. Brown, *Plaintiff,* <br><br> v. <br><br> **WEST CALN TOWNSHIP, CURTIS MARTINEZ, and ANTHONY SPARANO,** *Defendants.* | **CIVIL ACTION** <br> **NO. 24-6315** |

<u>**MEMORANDUM ON MOTION TO DISMISS SECOND AMENDED COMPLAINT**</u>

Baylson, J.                                                                                                    July 2, 2025

     Plaintiff Takeshia Landry ("Landry") brings this action pursuant to 42 U.S.C. § 1983 and state law following alleged violence at the hands of a West Caln Township Police Department Sergeant during a traffic stop. For the reasons stated below, Defendants West Caln Township and Curtis Martinez's (the "West Caln Defendants") Motion to Dismiss Landry's Second Amended Complaint is **GRANTED in part and DENIED in part.**

## I.   <u>FACTUAL ALLEGATIONS</u>

     The Court accepts the factual allegations in the Second Amended Complaint as true for the limited purpose of this Motion to Dismiss. Landry, an African American woman, brings this action individually and as a representative of her minor son. Second Am. Compl. ¶ 3, ECF 21. Defendant Anthony Sparano ("Sparano") was a white male Sergeant with the West Caln Township Police Department. <u>Id.</u> ¶ 4. Defendant Curt A. Martinez ("Chief Martinez") is the Chief of Police at the West Caln Township Police Department. <u>Id.</u> ¶ 5.

### A.  **The November 10, 2021, Incident**

     On November 10, 2021, shortly after midnight, Sparano was on patrol and signaled to pull over Landry's car after she made a left turn at a red light. <u>Id.</u> ¶¶ 7, 10–11. Landry slowed down,

turned on her hazard lights, and searched for a better area to stop.  Id. ¶ 11.  Once she stopped, Sparano approached Landry's car and spoke in an abrupt and disrespectful tone.  Id. ¶ 12.  Landry was holding a camera to record the interaction.  Id. ¶ 13.  Sparano reached into Landry's car and slapped the camera out of her hand.  Id. ¶¶ 14–15.  Landry feared she was in danger and drove off with her car's hazard lights on.  Id. ¶¶ 16, 21.  Sparano did not activate his body camera and dashboard camera as was required.  Id. ¶ 71.

Sparano drew his weapon and shot at Landry's car.  Id. ¶ 17.  Sparano shot the rear passenger window of Landry's car.  Id. ¶ 18.  Landry heard the gunshot and heard the bullet hit the window and became more fearful.  Id. ¶ 19.  Sparano chased Landry for two minutes.  Id. ¶ 20.  Landry attempted to call her family; her minor son answered her FaceTime call.  Id.  After two minutes, Landry pulled her car over.  Id. ¶¶ 20, 22.  Sparano parked his car next to hers[1] and yelled "put [your] fucking hands outside the window," which Landry had already done.  Id. ¶ 22.  Sparano approached Landry's car, grabbed her hair, and punched her head and face while she was in the driver's seat.  Id. ¶ 28.  Sparano dragged Landry out of her car by her hair, which was ripped from her scalp, while she was still wearing her seatbelt still.  Id. ¶¶ 28–29.  Landry's minor son was on FaceTime and yelled "leave my mother alone."  Id. ¶¶ 28, 30.  Sparano threw Landry to the ground, choking her and punching her head.  Id. ¶ 30.  Landry's minor son remained on FaceTime on and continued to scream and cry while yelling "leave my mother alone."  Id.

Sparano was criminally charged with (1) recklessly endangering another person, (2) simple assault, and (3) propelling a missile into an occupied vehicle.  Id. ¶ 33.  On February 3, 2024, a jury found Sparano guilty on the first two charges and acquitted him on the third.  Id.

---

[1] Landry alleges Sparano should have parked his car behind her car to allow his dashboard camera to record the interactions.  Second Am. Compl. ¶¶ 23–24, ECF 21.  Portions were captured by the dashboard and body worn cameras of an officer who came to the scene.  Id. ¶ 31.

### B. Sparano's Work History and Hiring

Sparano worked for the Coatesville Police Department for eighteen years, during which Chief Martinez also served there.  Id. ¶ 34.  While employed by Coatesville, Sparano experienced a psychotic breakdown, resulting in him acting violently.  Id. ¶ 42.  Chief Martinez was present during this incident.  Id.  Shortly after, Sparano was terminated for cause from Coatesville, and his municipal police certification was revoked, rendering him decertified.  Id. ¶¶ 44, 55.

In 2013, Sparano applied for a job at the West Caln Township Police Department.  During the hiring process, Chief Martinez and Board of Supervisors member Paul Pfitzenmeyer certified under penalty of perjury that they were not aware of any misrepresentations in Sparano's application and that he had undergone a background check.  Id. ¶¶ 58–61.  But Sparano's application stated that he had resigned from Coatesville and did not address psychological evaluations in conjunction with his previous employment.  West Caln Township, its Board of Supervisors, and Chief Martinez knew that Sparano was terminated and had mental health issues.  Id. ¶¶ 54, 58.  Additionally, neither Chief Martinez nor Pfitzenmeyer required Sparano to undergo the psychological interview mandated by Pennsylvania before recertification.  Id. ¶ 62.  Nonetheless, Sparano regained his certification and was hired as a Sergeant—a supervisory position—by the West Caln Township Police Department in 2014.  Id. ¶¶ 65, 88.[2]

On July 3, 2019, Sparano and another officer allegedly used unconstitutional force against two African American men who attempted to record them during a traffic stop, leading to a lawsuit.  Id. ¶¶ 45, 75.  The West Caln Defendants knew of the 2019 incident because the Board of Supervisors receives a report bi-weekly reports on police and legal matters.  Id. ¶¶ 66, 76.

---

[2] Landry alleges that Chief Martinez stated he "do[es not] trust any of the officers" in his department except Officer Fries—the only officer he didn't hire.  Id. ¶ 64.  Landry also alleges that Chief Martinez has stated, "I'm tired of hiring cops who have been fired and giving them second chances."  Id. ¶ 65.

Nonetheless, Sparano was not disciplined.  Id. ¶ 79.  In fact, from 2014 to 2024, Sparano's appointment as a police officer was renewed annually, despite this history.  Id. ¶ 68.

## II.    PROCEDURAL HISTORY

On October 28, 2024, Landry filed the instant case individually and as a representative of her minor son in the Court of Common Pleas of Chester County.  ECF 1-2.  On November 26, 2024, the West Caln Defendants removed the case to this District.  ECF 1.  All Defendants moved to dismiss, ECF 4, 9, and the Court granted in part and denied in part these motions with leave to amend.  ECF 15, 16.  On March 20, 2025, Landry filed a First Amended Complaint.  ECF 21.  Sparano moved to dismiss in part and the West Caln Defendants moved to dismiss in full, ECF 22, 23.  The Court granted both motions with leave to amend.  ECF 30.

On May 13, 2025, Landry filed a Second Amended Complaint.  ECF 32.  Landry brings the following claims: use of excessive force in violation of 42 U.S.C. § 1983 as to Sparano, assault and battery as to Sparano, intentional infliction of emotional distress as to Sparano, and municipal liability pursuant to 42 U.S.C. § 1983 for violation of the Fourth Amendment as to the Township, John Doe in his official capacity, and Chief Martinez in his individual capacity.  Id.  On June 3, 2025, the West Caln Defendants filed a Motion to Dismiss, which is now before this Court.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff's complaint must include sufficient facts which, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (citing Twombly, 550 U.S. at 555), and so it will not suffice if it is "devoid of further factual

enhancement," Iqbal, 556 U.S. at 678 (citation omitted).  Thus, in considering a motion to dismiss, the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff, Doe v. Univ. of Scis., 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume that [the plaintiff] can prove facts that it has not alleged[,]" Twombly, 550 U.S. at 563 n.8 (quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983)).

## IV.    DISCUSSION

At issue is Count V, which alleges violations of the Fourth Amendment under 42 U.S.C. § 1983 against the Township, Martinez (in his individual capacity), and John Doe (in his official capacity).  To state a claim under § 1983, a plaintiff must show that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or federal law.  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).

### A.  Municipal Liability

Municipal liability requires a policy, practice, or custom that caused the constitutional violation or that the plaintiff show deliberate indifference.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–94 (1978).  Allegations that are mere restatement of the legal elements of a Monell claim do not state a claim for relief.  Ashcroft v. Iqbal, 556 U.S. at 680; Twombly, 550 U.S. at 570.  Because municipal liability often depends on facts beyond the plaintiff's personal knowledge, a municipal liability claim "is generally not amenable to resolution at the pleading stage . . . ."  3909 Realty LLC v. City of Phila., 2021 WL 2342929, at *4 (E.D. Pa. June 8, 2021) (Kenney, J.).

Landry asserts three theories of municipal liability: failure to screen, failure to train, and failure to discipline and supervise.   She pleads facts sufficient to permit her theories of failure to screen and failure to discipline and supervise to proceed.

###### i. Failure to Screen

Landry alleges a policy, custom, or practice of hiring police officers, including Sparano, who were terminated for cause from other police departments.  Sec. Am. Compl. ¶¶ 49, 53; see Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 410 (1997).  "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'"  Id. at 411.

Landry has plausibly pled municipal liability based on a failure to screen theory.  Landry alleges that the West Caln Defendants knew Sparano had been fired, had his certification revoked, and had a mental health breakdown leading to these events.  Nonetheless, the West Caln Defendants approved Landry's recertification, failed to put him through the psychological evaluation required for recertification, and placed him in a supervisory role.  Second Am. Compl. ¶¶ 55–59, 62.  Chief Martinez's alleged statements that he did not trust any officers he hired and was "tired of hiring cops who have been fired" further plausibly pleads a policy, custom, or practice and/or deliberate indifference regarding hiring police officers terminated for cause from other police departments.  Id. ¶¶ 64–65.  Together, these plausibly plead a failure to screen theory of municipal liability.  See Durham v. City of Phila., 2020 WL 6940021, at *2 (E.D. Pa. Nov. 25, 2020) (Kearney, J.).[3]

---

[3] At this stage of the litigation, denial of the Motion to Dismiss Count V based on a failure to screen theory of municipal liability is appropriate since "common sense suggests that the relevant facts are largely within control of the" West Caln Defendants.  Harvey v. Cty. of Hudson, 2015 WL 9687862, at *10 (D.N.J. Nov. 25, 2015); see 3909 Realty LLC v. City of Phila., 2021 WL 2342929, at *4 (E.D. Pa. June 8, 2021) (Kenney, J.).

### ii. Failure to Train

Landry alleges that the West Caln Defendants failed to train officers on legal traffic stops, the rights of individuals to record exchanges with police, and the use of force, and that this failure amounted to deliberate indifference. Second Am. Compl. ¶¶ 85, 90. While Landry alleges the Township failed to seek "police management and training" assistance from the state, Landry fails to plead that her alleged constitutional injuries were a highly predictable consequence, Kline ex rel. Arndt v. Mansfield, 255 F. App'x 624, 629 (3d Cir. 2007) (non-precedential), or allege "how the [Police Department] training programs were deficient" on these topics. Ekwunife v. City of Phila., 245 F. Supp. 3d 660, 676 (E.D. Pa. 2017) (Robreno, J.), aff'd, 756 F. App'x 165 (3d Cir. 2018) (non-precedential). Otherwise, Landry's Second Amended Complaint contains only conclusory allegations which fail to state a claim. Landry's failure to train theory is dismissed.

### iii. Failure to Supervise and Discipline

Landry asserts that the West Caln Defendants failed to discipline or supervise officers including Sparano, enabling future misconduct. Sec. Am. Compl. ¶¶ 79–80. While the burden to show deliberate indifference is high in the absence of a pattern of misconduct, liability may attach when the prior incident closely resembles the one at issue and involves the same person. See McDaniels v. City of Phila., 234 F. Supp. 3d 637, 645 (E.D. Pa. 2017) (Rufe, J.). Landry has plausibly pled such circumstances here.

Sparano's alleged July 2019 conduct, which the West Caln Defendants knew of, did not result in discipline. The facts of the instant case are sufficiently similar to those of the July 2019 incident involving alleged excessive force during a traffic stop and in response to African American individuals filming a police interaction. Landry has plausibly pled that her alleged constitutional violations were caused by a failure to discipline and supervise officers that reasonably could reflect deliberate indifference. Forrest v. Parry, 930 F.3d 93, 105 (3d Cir. 2019);

see Reitz v. Cty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).

**B. Claim Against Chief Martinez**

A supervisor incurs Section 1983 liability in connection with the actions of another only if he or she had "personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n. 3 (1981)).  A supervisor may be individually liable under § 1983 if he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinate' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citing Baker v. Monroe T'ship, 50 F.3d 1186, 1190–91 (3d Cir. 1995).

Landry fails to plausibly plead Chief Martinez's personal involvement in Sparano's alleged violations of Landry's constitutional rights.  Landry alleges that after Sparano applied for a job at the West Caln Township Police Department, Chief Martinez certified under penalty of perjury that he was unaware of misrepresentations in Sparano's application even though his application stated that he had resigned from the Coatesville Police Department and Chief Martinez knew this was not true, and recertified Sparano without putting Sparano through the psychological evaluation required by state law.  Second Am. Compl. ¶¶ 58–61, 65, 88.  While concerning, none of these allegations plausibly plead that Chief Martinez participated in Landry's traffic stop, directed Sparano to violate Landry's constitutional rights during the traffic stop, or had "knowledge of and acquiesced in" Sparano's unconstitutional conduct during the traffic stop.  Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014), rev'd on other grounds sub nom., Taylor v. Barkes, 575 U.S. 822 (2015).  Thus, while Landry argues Chief Martinez was personally involved because he facilitated Sparano's recertification, this does not plausibly plead Chief Martinez's personal involvement in the alleged constitutional violation itself.  See Robinson v. City of Pittsburgh, 120

F.3d 1286, 1293–95 (3d Cir. 1997), <u>abrogated in part on other grounds by</u>, <u>Burlington N. & Santa</u>

<u>Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006).  Count V against Chief Martinez is dismissed.

V.    **CONCLUSION**

   For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED in part and**

**DENIED in part.**[4]  An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 24\24-6315 Landry v West Cain Twp\24-6315 Memo on Motion to Dismiss 2d Am Compl..docx

---

[4] The Court declines to grant Landry leave to file a Third Amended Complaint.  Fed. R. Civ. P. 15(a)(2) gives courts the discretion to deny leave based on, among other things, repeated failure to cure deficiencies by previous amendments.  <u>Mullin v. Balicki</u>, 875 F.3d 140, 149 (3d Cir. 2017).  After carefully considering the pleadings and procedural history, this Court concludes that dismissal of the failure to train theory of municipal liability and claims against Chief Martinez are appropriate "pursuant to [the Court's] inherent authority to manage its docket" and based on Landry's repeated failure to cure deficiencies in her allegations.  <u>Lee v. Krieg</u>, 227 F. App'x 146, 148 (3d Cir. 2007) (non-precedential).